SMITH, Judge.
We are asked to reverse an award entered by the deputy commissioner in the hearing below, awarding claimant reimbursement of funds she expended for construction of a lap pool at her home to enable her to engage in swimming exercise. We affirm.
Claimant suffers from recurring phlebitis and also has had a pulmonary embolus, a life-threatening condition, which occurred shortly after an injury to her left foot at work in April 1979. Treatment for claimant’s phlebitis involves anti-coagulant medication. In the course of her employment on November 12, 1979, claimant slipped and fell on her left knee, with her foot underneath her, injuring her hip, knee, and ankle. As a result of this accident, claimant suffered an ankle injury diagnosed as reflex dystrophy. Claimant testified that her ankle and knee were swollen, her hip was tender, and it hurt her to stand, sit, and lie down. Treatment for claimant’s leg injury consisted of anti-inflammatory medication and exercise. However; since the anti-inflammatory medication presents a danger of bleeding, claimant is unable to take this medication for her leg injury. Therefore, the sole treatment for claimant’s leg injury is exercise. Claimant testified that she had unsuccessfully tried other exercises such as walking and bicycle riding. Walking presented a dangerous situation to claimant since it enhanced her chances of pulmonary embolus and bicycle riding was too painful. Claimant needed to exercise because prolonged periods of immobilization caused by pain would contribute to the development of phlebitis. She testified that she had been swimming since 1982 and that it was the only exercise that relieved her pain. She had been using pools, belonging to friends, which she stated are no longer available to her.
The sole, uncontroverted medical testimony presented at the hearing below was that of claimant’s treating physician, Dr. Lorraine Flatt. Dr. Flatt’s testimony was that claimant is in significant, genuine pain. Dr. Flatt recommended swimming as treatment for claimant’s leg injury, not only to relieve her pain, but to prevent a recurrence of phlebitis and possible pulmonary embolus. Dr. Flatt testified that without swimming, claimant would have to perform weight-bearing exercises which would make her ankle injury worse. The closest pool to claimant’s home is 56 miles away. Dr. Flatt stated that long distance driving would enhance the possibility of recurring phlebitis. Therefore, it was Dr. Flatt’s conclusion that a swimming pool at claimant’s home was medically necessary for treatment of claimant’s leg injury.
Claimant first requested the E/C to furnish a pool, and when this was denied she mortgaged her home and had a lap pool (16' X 32' x 4' deep) installed in her yard. The contract price for the pool is $8,328.20, which includes, among other things, installation, steps, handrails, plumbing, a heater, and decks.
The deputy commissioner found that claimant’s history of pulmonary embo-lus makes routine exercise essential to *1020 claimant’s health, that her painful ankle injury makes most other forms of exercise unrealistic, and that her daily use of a swimming pool is a medical necessity. These findings are supported by competent, substantial, and uncontroverted evidence in the record. The deputy commissioner concluded that a swimming pool was a medical necessity for her recovery from injuries resulting from her accident, and ordered the employer/carrier to reimburse claimant for the expenses involved in construction of the pool.
In urging reversal of this award, the employer/carrier argue that claimant’s medical condition does not constitute a set of extremely unique circumstances justifying exceptional relief, citing Haga v. Clay Hyder Trucking Lines, 397 So.2d 428 (Fla. 1st DCA 1981), and Firestone Tire and Rubber Co. v. Vaughn, 381 So.2d 740 (Fla. 1st DCA 1980). We must view this appeal, of course, in the light of the circumstance that the E/C submitted no medical evidence below, and presented no evidence that the pool could have been provided at less expense. Most significantly, in the face of uncontroverted medical evidence that swimming exercise was medically necessary for claimant’s recovery and even for the preservation of her life, the E/C offered no alternative to the drastic measures ultimately undertaken by the claimant to supply the means whereby her life-sustaining exercise could be accomplished.
We find, based upon our examination of the record, that the deputy commissioner was justified in concluding that award of reimbursement for the pool was proper under the restrictive standards enunciated by the court in Haga v. Clay Hyder Trucking Lines and Firestone Tire and Rubber Co. v. Vaughn, supra, both of these cases being cited in the deputy commissioner’s order and obviously considered by him in arriving at his decision. In the absence of a significant contest on the issue before the deputy commissioner, see, Chain Store Warehouses v. Picard, 431 So.2d 685 (Fla. 1st DCA 1983), we are compelled to accept the conclusion, implicit in the deputy commissioner’s order as well as apparent from the record itself, that claimant’s condition presented a “set of extremely unique circumstances” warranting the granting of “highly extraordinary relief.” Haga, 397 So.2d at 429.
AFFIRMED.
JO ANOS- and ZEHMER, JJ., concur.