597 So.2d 394 (1992)
TEMPS & COMPANY SERVICES and Liberty Mutual Insurance Company, Appellants/Cross-Appellees,
v.
Donna CREMEENS, Appellee/Cross-Appellant.
No. 91-2396.
District Court of Appeal of Florida, First District.
April 17, 1992.
*395 G. Dennis Lynn, Jr., of Greene & Mastry, P.A., St. Petersburg, for appellants/cross-appellees.
Peter H. Dubbeld & Joey D. Oquist, of Peter H. Dubbeld, P.A., St. Petersburg, for appellee/cross-appellant.
SHIVERS, Judge.
The employer/carrier (e/c) appeal, and claimant cross-appeals, an order of the judge of compensation claims (JCC) that, in pertinent part: 1) ordered the e/c to reimburse claimant in the sum of $6,358.63, representing the entire purchase price of a 1986 Chevrolet Camaro with automatic transmission and power steering (AT/PS), with no credit for the trade-in value of claimant's 1988 Ford Festiva; 2) made the e/c responsible for all insurance, major maintenance and repair costs of the replacement vehicle; 3) found that no attempt was made by the e/c to deliver the needed motor vehicle to claimant; and 4) allowed the e/c to choose whether to title the replacement vehicle in claimant's name, over her objection. We reverse as to the first three findings and affirm as to the issue cross-appealed concerning titling the car.
Claimant, a 36-year-old woman, sustained the amputation of four fingers on her dominant right hand on April 17, 1990, while working at Medical Technologies as a temporary employee provided by appellant Temps & Company. Her claim eventually *396 led to a final hearing on December 7, 1990, after which the JCC issued the order resulting in this appeal/cross-appeal.
The e/c contend that the JCC erred in awarding claimant the entire purchase price of the replacement vehicle, with no credit to the e/c for the trade-in value of claimant's prior vehicle. It is undisputed that claimant has a medical need of a modified vehicle with AT/PS pursuant to section 440.13(2)(a), Florida Statutes (1989); see Stables v. Rivers, 562 So.2d 784, 786 (Fla. 1st DCA 1990). Despite the efforts of the e/c to have a special strap device made to aid claimant in shifting the gears on the Festiva, the device proved unreliable and unsafe. Mechanical modification of the vehicle was unfeasible because it had front-wheel drive.
The JCC determined that the Camaro purchased by claimant is a medical expense or apparatus, and relied on the line of decisions holding that a medical expense or apparatus is not apportionable. See, e.g., Skinner v. Florida Power Corp., 580 So.2d 615 (Fla. 1st DCA 1991); Applegate Drywall Co. v. Patrick, 559 So.2d 736 (Fla. 1st DCA 1990). We agree with the e/c that the decisional law does not support the JCC's award of the entire purchase price of the replacement vehicle.
At the time of the accident, claimant already owned an automobile. As a result of her injuries, she required a motor vehicle with AT/PS. "The test for when medical benefits may be awarded is whether the award would improve the condition caused by the accident or would aid in the recovery from the accident." Brown v. Steego Auto Parts, 585 So.2d 401, 403 (Fla. 1st DCA 1991). It was the special AT/PS options, not the Camaro itself, that met this definition of "medically necessary" components, that is, apparatus used to mitigate the effects of the injury. Section 440.13(1)(c), Florida Statutes; Stables, 562 So.2d at 785. We find that Firestone Tire & Rubber Co. v. Vaughn, 381 So.2d 740 (Fla. 1st DCA 1980) is inapposite, as the circumstances there were admittedly "highly unique" and claimant was not modifying or substituting a replacement swimming pool. Because the pool itself was the necessary medical apparatus, the costs were not apportionable. See 381 So.2d at 742.
In Skinner, the quadriplegic claimant constructed a new 2,300-square-foot, $310,000 wheelchair-accessible home. Acknowledging that Chapter 440, Florida Statutes, does not provide for apportionment of necessary costs of medical apparatus, we held the e/c responsible only for the necessary and reasonable costs of making the home wheelchair-accessible, an amount about 1/10 of the cost of the entire house. Id. at 616. The modifications were the medical apparatus that we deemed not to be apportionable. By analogy, the AT/PS options are the medical apparatus necessary to permit claimant to drive, and thereby constitute medical apparatus the cost of which should be borne by the e/c. See Fidelity & Casualty Co. of New York v. Cooper, 382 So.2d 1331 (Fla. 1st DCA 1980) (awarding reasonable and necessary costs of modification of motorcycle following loss of claimant's hand).
We find Ramada Inn South Airport v. Lamoureux, 565 So.2d 376 (Fla. 1st DCA 1990), factually similar. In that case, it was agreed that claimant needed handicapped-equipped housing, but her existing residence could not be modified as needed and constituted a safety hazard. The JCC directed the e/c either to provide claimant with a rent-free handicapped-equipped and wheelchair-accessible apartment, or to purchase for her a similarly equipped house or condominium. We reversed and remanded in part, holding that the e/c should bear responsibility only for the difference between the cost of the existing apartment and the cost of a fully-equipped residence meeting the specifications set out in the JCC's order. Id. at 377. If we had ruled according to the instant claimant's theory, claimant in Lamoureux would have been awarded the entire cost of the replacement residence, as a non-apportionable medical expense.
The e/c assert that the JCC should have awarded claimant $795, an amount that by the e/c's reckoning is the difference between the book value of claimant's Festiva *397 ($3,500) and the most expensive ($4,295) of the three "similar" cars located through an auto search agency and offered by the e/c as potential replacement vehicles. Alternatively, the e/c suggest that the proper award is $2,500, representing the difference between the trade-in value of the Festiva and the actual cost of the Camaro.
Ordinarily an award would be based on the actual difference between the book value of the prior vehicle and the cost of a similar replacement car with the medically necessary apparatus. Given the unusual circumstances presented in the record, however, we find that an award of $2,500 as reimbursement to claimant is justified. Accordingly, we reverse that portion of the order awarding claimant the entire cost of the Camaro.
As to the requirement that the e/c bear the expenses of all insurance, major maintenance and repair costs of the replacement vehicle, we reverse on the authority of Polk County Board of Commissioners v. Varnado, 576 So.2d 833 (Fla. 1st DCA 1991). In Varnado, we found that the costs of claimant's "normal living expenses" not caused by the accident are not the e/c's responsibility except in unique circumstances not found here. Id. at 838. The record shows that prior to the accident, claimant was responsible for the incidental costs of automobile ownership such as insurance, gasoline, title and license plate. As with the home-related costs of utilities in Varnado, the need of insurance, maintenance and repair of the replacement vehicle was not caused by claimant's accident. The e/c are to be responsible only for those expenses uniquely attributable to providing the medically required AT/PS options and making those options continually available to claimant. Delong v. 3015 West Corp., 558 So.2d 108 (Fla. 1st DCA 1990); Cover v. TG & Y, 377 So.2d 792 (Fla. 1st DCA 1979) (reversing order that had denied award of repair costs of pump essential to seasonal use of medically necessary pool). In Applegate, the e/c were made responsible for insurance, maintenance and repair costs related to the award of a wheelchair van. The case sub judice is different from that decision and Firestone Tire in that claimant's medical benefits were the AT/PS, not the entire vehicle or swimming pool, respectively.
We reverse the order as to this second issue and remand for the JCC to order the e/c responsible only for those expenses for insurance, major maintenance and repair directly attributable to the AT/PS. Varnado. Claimant is to bear the initial cost of said expenses and is to be reimbursed by the e/c upon a presentation of proper documentation of the expenses.
The JCC found that "[o]ther than the providing of several leads of motor vehicles that the employer/carrier believed to be similar, no attempt was made by the employer/carrier to deliver the needed motor vehicle to the claimant." Based on that finding, the JCC determined that claimant was entitled to purchase the Camaro on her own, with only the reasonableness and necessity of the expense to be approved by the JCC. Firestone Tire. The JCC determined that claimant undertook an adequate search to locate a suitable vehicle and that its purchase and cost were reasonable and necessary. Relying on Edgewood Boys' Ranch Foundation v. Robinson, 451 So.2d 532 (Fla. 1st DCA 1984), the JCC held that the e/c were not in a position to dispute the appropriateness of claimant's decisions. We find Robinson to be factually quite different in that here the parties vigorously disagreed as to what constituted a "similar" vehicle.
Additionally, the finding of a minimal attempt by the e/c to assist claimant is not supported by CSE. The e/c provided cab service for claimant to get to therapy and provided an aide to run errands. The e/c considered measures for modifying claimant's Festiva and provided an occupational therapist who attempted to provide a strap device to allow claimant to engage the four-speed manual transmission. An auto search group was used to locate three similar prospective replacement vehicles. The adjuster provided contacts at each of the car dealerships. Cf. Firestone Tire (apparently, e/c were requested, but failed, to provide the medically necessary pool); *398 Robinson. It was claimant who initiated the offer to trade in her Festiva for a similar vehicle with AT/PS, with a deduction for the trade-in value of her car. Subsequent events, for which neither party is entirely responsible, fostered an atmosphere of distrust and lack of cooperation, such that claimant and the e/c were unable to agree on a replacement car.
As cross-appellant, claimant argues that the JCC erred in allowing the e/c to choose whether to have title to the replacement vehicle in claimant's name. Section 440.13(2)(a), Florida Statutes, requires the e/c to furnish medically necessary apparatus, which was done here. We recognized in Firestone Tire that an order requiring the e/c to furnish medically necessary apparatus pursuant to section 440.13, Florida Statutes, is not necessarily "an unconditional mandate for `vesting of title'" in claimant's name. Id., 381 So.2d at 742. An order may not require the e/c to purchase the medical apparatus and place title in claimant's name, for that is error. Aino's Custom Slip Covers v. DeLucia, 533 So.2d 862, 865 (1st DCA 1988), rev. den., 544 So.2d 199 (Fla. 1989). The vesting of title in claimant's name is not per se prohibited under Chapter 440, Florida Statutes. The test is whether section 440.13(1), Florida Statutes, required the e/c to furnish the medical apparatus. Firestone Tire, 381 So.2d at 742. We find that the e/c met its statutory obligation to furnish a vehicle with AT/PS, and that the JCC acted within the authority granted under Chapter 440, Florida Statutes, in permitting the e/c to place title to the motor vehicle in claimant's name. Accordingly, we affirm that portion of the order.
AFFIRMED in part, REVERSED in part, and REMANDED with directions.
MINER and WOLF, JJ., concur.