PER CURIAM.
 

 The Employer/Carrier (E/C) raises three issues in this workers’ compensation appeal contending the Judge of Compensation Claims (JCC) erred in (1) awarding benefits that were not in default and ripe, due, and owing; (2) awarding attendant care benefits; and (3) denying the E/C’s motion for appointment of an expert medical advisor. We reverse as to the first two issues and find it unnecessary to address the third issue.
 

 BACKGROUND
 

 Since sustaining serious brain and hip injuries when he fell from a horse in a compensable accident on March 19, 1982, Claimant, now age 52, has lived with his parents and continues to work for the employer. On March 23, 2010, Claimant filed a petition for benefits requesting all benefits listed in a life care plan prepared on March 15, 2010, by Gem Pennachio, a vocational expert, rehabilitation counselor, and certified life care planner.
 
 *
 
 Claimant also sought attorney’s fees and costs. In a motion to dismiss the petition for benefits and at the final hearing, the E/C contended, among other things, that: (1) the benefits requested were not ripe, due, and owing because the life care plan only dealt with projected evaluations; (2) the claim for attendant care was not accompanied by
 
 *639
 
 a prescription stating the time periods for such care, the level of care required, and the type of assistance required; and (3) the recommendations for medications were not accompanied by prescriptions from any authorized physician. With one minor exception, the JCC approved the life care plan and authorized the recommendations contained in it.
 

 The items for which costs were estimated in the life care plan included attendant care for eight hours per day, beginning in 2010, the purpose of which was stated in the plan as providing a safe environment and financial management for Claimant. The plan stated that attendant care was recommended by Dr. Sharfman, Claimant’s treating neurologist. The plan also included the estimated costs of a projected hip replacement in 2015, assistive devices for the hip replacement, and medications after hip replacement as well as the estimated costs of an assisted living facility for Claimant beginning in 2025. On March 18, 2010, Dr. Sharfman signed a note stating that it was medically reasonable and necessary to implement all of the recommendations in the plan and that the accident was the cause of the need to implement the recommendations.
 

 Claimant deposed Pennachio on September 23, 2010, more than six months after she had prepared the life care plan and Dr. Sharfman had signed the March 18, 2010, note endorsing it. The JCC admitted Pennachio’s deposition testimony at the final hearing. The JCC also admitted the deposition testimony of Dr. Evans, Claimant’s treating orthopedist, and Dr. Gerber, Claimant’s physiatrist. Dr. Sharf-man was not deposed, and his records (aside from the March 18, 2010, note) were not offered into evidence.
 

 THE JCC’s ORDER
 

 In the order on appeal, the JCC found Claimant’s mother handles Claimant’s finances, cooks, cleans, and takes him to doctor’s appointments and that Claimant is not independent in all activities. The JCC further found Claimant can bathe and dress himself, but requires supervision throughout the day, is incapable of living by himself, and requires monitoring of the kind provided by his mother since the accident. The JCC also found the recommendations in the life care plan were approved by Dr. Sharfman and Dr. Evans. Acknowledging that attendant care is not available for mere quality-of-life issues, the JCC nevertheless concluded Claimant was in need of passive, on-call attendant care because of his inability to think clearly. The JCC rejected the E/C’s argument that there was no prescription for attendant care and found that Dr. Sharfman’s note approving the life care plan incorporated the life care plan by reference. The JCC further found eight hours of daily attendant care awardable “irrespective of any gratuitous household duties,” based on Claimant’s mother’s testimony that she monitored Claimant when he was at home and kept in touch with him by cell phone when he was working.
 

 The JCC also found some of the benefits recommended in the life care plan were not ripe, due, and owing, specifically identifying hip replacement surgery, assistive devices for the hip replacement, medications recommended in light of the hip replacement, and an assisted living facility.
 

 The JCC then concluded:
 

 I find that although there are benefits recommended that are not to be provided until some point in the future that does not prevent me from approving the life care plan as to those benefits now. I find that the parties would still be left in a position to move for modification of the life care plan should there be a change in condition or circumstances that no longer make such care appropri
 
 *640
 
 ate. Modification of the plan can be had either by agreement of the parties or by a petition for modification. Therefore based on the recommendations of Dr. Sharfman I approve the plan (with the following exception) and find that it is reasonable, medically necessary and causally related to the industrial accident and the injuries flowing there from (sic).
 

 With the exception of the recommendation for a chair lift recliner, the JCC then “approved” the life care plan and granted the “requested authorization of the recommendations made” in the life care plan. The JCC also found Claimant entitled to attorney’s fees and costs for securing the benefits awarded, reserving jurisdiction as to amount. In a subsequent order denying the E/C’s motion for rehearing/clarification, the JCC stated:
 

 The [amended final compensation] order clearly indicates that although the life care plan proposed certain treatments and care as being required at certain points in the future, based on the doctors approval of the life care plan those future benefits are to be provided at the appointed times unless a change of condition or circumstance otherwise demands modification. The party seeking modification has the burden to pursue such as otherwise provided by law.
 

 AWARD OF BENEFITS NOT IN DEFAULT AND RIPE, DUE, AND OWING
 

 The E/C’s first point on appeal involves the JCC’s application of undisputed facts to the law because the JCC awarded benefits that he expressly found were not ripe, due, and owing. Thus, review is
 
 de novo. See Gilbreth v. Genesis Eldercare,
 
 821 So.2d 1226, 1228 (Fla. 1st DCA 2002).
 

 Section 440.192, Florida Statutes (2009), provides in pertinent part:
 

 (1) Any employee may, for any benefit that is ripe, due, and owing, file by certified mail, or by electronic means approved by the Deputy Chief Judge, with the Office of the Judges of Compensation Claims a petition for benefits which meets the requirements of this section and the definition of specificity in s. 440.02.
 

 [[Image here]]
 

 (3) A petition for benefits may contain a claim for past benefits and continuing benefits in any benefit category, but is limited to those in default and ripe, due, and owing on the date the petition is filed.
 

 We have defined ripeness in this context as a “real, substantial controversy which is definite and concrete rather than hypothetical or abstract.”
 
 Soriano v. Gold Coast Aerial Lift, Inc.,
 
 705 So.2d 636 (Fla. 1st DCA 1998) (quoting
 
 Hallandale Prof'l Fire Fighters Local 2238 v. City of Hallandale,
 
 922 F.2d 756, 760 (11th Cir.1991)).
 

 Here, there is no question that a substantial portion of the benefits awarded were not “in default and ripe, due, and owing.” In fact, the JCC found the hip replacement surgery, assistive devices for the hip replacement, medications recommended in light of the hip replacement surgery, and the services of an assisted living facility were not ripe, due, and owing. To the extent the order can be interpreted as approving the life care plan, as opposed to awarding the benefits recommended in the life care plan, the order is still erroneous because (1) a life care plan is not in itself a benefit recognized under the workers’ compensation law, and (2) the JCC expressly stated that the E/C would have to modify the order before it could deny the benefits recommended in the life care plan although those benefits were not ripe, due, and owing.
 
 See Diamond R.
 
 
 *641
 

 Fertilizer v. Davis,
 
 567 So.2d 451, 455 (Fla. 1st DCA 1990) (finding JCC erred in adopting life care plan as a whole rather than awarding only those benefits from plan which were supported by evidence of medical necessity). Consequently, the JCC’s award of “the recommendations made in the life care plan,” which he found were not ripe, due, and owing, was erroneous.
 

 ATTENDANT CARE
 

 The E/C’s second point on appeal challenges the JCC’s award of attendant care. To the extent the award of attendant care turns on a resolution of the facts, the review standard is competent, substantial evidence; to the extent it involves an interpretation of law, the standard is
 
 de novo. See Mylock v. Champion Int’l,
 
 906 So.2d 363, 365 (Fla. 1st DCA 2005).
 

 The applicable statute for awarding compensation for attendant care is the statute in effect at the time the compensa-ble care was given.
 
 Socolow v. Flanigans Enters.,
 
 877 So.2d 742, 744 (Fla. 1st DCA 2004). Section 440.13(2)(b), Florida Statutes (2009), provides in relevant part:
 

 The employer shall provide appropriate professional or nonprofessional attendant care performed only at the direction and control of a physician when such care is medically necessary. The physician shall prescribe such care in writing. The employer or carrier shall not be responsible for such care until the prescription for attendant care is received by the employer and carrier, which shall specify the time periods for such care, the level of care required, and the type of assistance required. A prescription for attendant care shall not prescribe such care retroactively.
 

 Even if Dr. Sharfman’s March 18, 2010, note stating that it is medically reasonable and medically necessary to implement all of the recommendations made in the life care plan is deemed sufficient to incorporate by reference the portions of the life care plan pertinent to attendant care, it still does not meet the requirements of section 440.13(2)(b) because it fails to specify the type of assistance and the level of care required. To the degree the life care plan addresses the types of assistance required, “providfing a] safe environment” is too vague to adequately describe the type of care required. In addition, financial management, identified in the life care plan as another purpose of the recommended attendant care, is not a com-pensable form of attendant care.
 
 See AT & T Wireless Servs., Inc. v. Castro,
 
 896 So.2d 828, 831 (Fla. 1st DCA 2005) (“Normally, only direct care that is medically necessary is compensable.”). Finally, we reject Claimant’s suggestion that the deposition testimony of Pennachio and the testimony of Claimant’s mother at the final hearing adequately described the kind of attendant care recommended by Dr. Sharf-man. Section 440.13(2)(b) requires that the prescription itself specify the time periods for such care, the level of care required, and the type of assistance required.
 

 The issue in this case is not whether passive or on-call attendant care is awardable. Indeed, this court has concluded such care is awardable when medically necessary.
 
 Jackson v. Columbia Pictures,
 
 610 So.2d 1349 (Fla. 1st DCA 1992). The question in this case is whether such care is medically necessary and specifically prescribed by a physician as required by section 440.13(2)(b). Dr. Sharfman’s “prescription” was not specific, and Penna-chio’s testimony is not competent to establish medical necessity.
 
 See Adams Bldg. Materials, Inc. v. Brooks,
 
 892 So.2d 527, 529-530 (Fla. 1st DCA 2004) (reversing attendant care award of 12 hours per day
 
 *642
 
 where vocational expert testified it was necessary, but physician did not). Accordingly, the award of attendant care must be reversed.
 

 CONCLUSION
 

 We reverse the JCC’s approval of the life care plan and the award of all benefits that were not in default and ripe, due, and owing when the petition for benefits was filed. We also reverse the award of attendant care benefits. Given this disposition, it is not necessary to address the JCC’s denial of the E/C’s motion for appointment of an expert medical advisor.
 

 REVERSED and REMANDED for further proceedings.
 

 HAWKES, THOMAS, and ROBERTS, JJ., Concur.
 

 *
 

 "Life care planners prepare comprehensive projections of future medical care and treatment needs to aid economists in calculating the present value of future medical care and treatment.”
 
 Olges v. Dougherty,
 
 856 So.2d 6, 8 n. 1 (Fla. 1st DCA 2003).